**NATIONAL WESTERN LIFE INSURANCE COMPANY,
Plaintiff-Appellant,**

v.

**COMMODORE COVE IMPROVEMENT DISTRICT, et al.,
Defendants-Appellees.**

No. 81–2155.

United States Court of Appeals,
Fifth Circuit.

June 7, 1982.

vailing party." *See United States v. 101.80* *Acres of Land*, 92 F.R.D. 774 (D.Idaho 1982).

Arlen M. Driscoll, Houston, Tex., for plaintiff-appellant.

C. Wayne Holder, Freeport, Tex., for defendants-appellees.

Before CLARK, Chief Judge, RUBIN and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The owner of residential lots situated in a waterfront subdivision contends that a local regulation requiring property owners to install bulkheading on lots not already bulkheaded is (1) an unconstitutional exercise of the police power; (2) a taking of its property without just compensation; and (3) a denial of equal protection of the law. The district court held that these contentions are meritless. We agree and affirm its judgment dismissing the owner's claims.

I

Hide-A-Way on the Gulf is a residential subdivision in Brazoria County, Texas, near the Gulf of Mexico. Its 290 lots front on canals suitable for navigation by boat, thus allowing lot owners to bring boats to their property. In late 1975 National Western Life Insurance Company ("National Western") acquired 133 lots, which it intended to sell. Few of these lots had bulkheads. There were then about thirty families who were full-time residents of the subdivision, and each of their lots had a bulkhead.

In April 1978 the Commodore Cove Improvement District ("the District"), a water control and improvement district formed under Texas law,[1] within whose jurisdiction

---

1. Tex.Const. art. 16, § 59. *See generally* 60 Tex.Jur.2d *Waters* § 421 (2d ed. 1964).

Hide-A-Way by the Gulf lies, adopted Regulation 3, which prohibits the transfer of any lot that lacks a bulkhead.[2] The regulation states that its purpose is "to protect the navigability of the State waters within [the] District." In compliance with the regulation and while this suit was pending, National Western installed bulkheads on each of its lots not yet so protected, at a cost of $408,000.[3] By the time the suit was tried, National Western had sold about ninety lots on a contract basis. The buyers were in default on some of these contracts. Forty lots remained unsold. Approximately ten of the lots in Hide-A-Way on the Gulf now either lack bulkheads or have bulkheads insufficient to meet the requirements of Regulation 3.

National Western sued the District under 42 U.S.C. § 1983, seeking a declaratory judgment that Regulation 3 is unconstitutional, a permanent injunction against enforcement of the regulation,[4] and damages allegedly suffered by National Western from being required to install bulkheads on its property.

## II

National Western contends that Regulation 3 violates the due process clause of the fourteenth amendment.[5] This contention comprises two distinct arguments: (1) the regulation is an unreasonable means of achieving its stated end, and (2) the regula-

tion effects a taking of National Western's property without just compensation. We discuss these arguments in turn.

## A

■ National Western argues that Regulation 3 impairs its "fundamental right" freely to alienate real property and that we, therefore, should apply the "strict scrutiny" standard of review in evaluating its claim that Regulation 3 is unreasonable and thus violates due process. We reject this argument. The right freely to alienate real property is not a "fundamental right" that calls for application of strict scrutiny. *E.g., Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 149 n.6 (5th Cir. 1981).[6]

National Western argues in the alternative that Regulation 3 nevertheless violates the due process clause because the regulation cannot withstand even the "rational basis" standard of review. National Western contends that Regulation 3 is not rational in terms of the governmental objective sought, and thus is an improper exercise of the District's police power because the regulation arbitrarily and capriciously designates the happening of a purely random event—the transfer of title to unbulkheaded property—as a condition precedent for the installation of bulkheading.

■■ Our inquiry under the rational basis test is whether Regulation 3 is a reason-

---

2. Regulation 3 makes it unlawful

   to build on, convey, transfer, acquire, broker, or sell, excepting by tax sales, any waterfront lot in the District unless that lot has existing bulkheading in an adequate state of repair to prevent the banks from caving in or is bulkheaded according to the ... specifications [set forth in the Regulation].

   The regulation further provides:

   The penalty for each offence [*sic*] shall be a fine of not more than $200.00 or imprisonment for not more than thirty days or both such fine and imprisonment and each day such violation shall continue shall constitute a separate offense.

3. National Western spent an additional $85,000 to bulkhead other properties to comply not with Regulation 3, but with obligations imposed on National Western by its contracts with purchasers of specific lots.

4. In an earlier appeal in this case, we affirmed the district court's order denying National Western's request for a temporary injunction against enforcement of Regulation 3 pending trial on the merits. 598 F.2d 619 (5th Cir. 1979) (mem.).

5. "No state shall ... deprive any person of life, liberty, or property, without due process of law...." U.S.Const. amend. XIV, § 1.

6. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 n.3, 96 S.Ct. 2562, 2566 n.3, 49 L.Ed.2d 520, 524 n.3 (1976); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 7, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797, 803 (1974); *Sotto v. Wainwright,* 601 F.2d 184, 191 (5th Cir. 1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1597, 63 L.Ed.2d 784 (1980). *See generally* J. Nowak, R. Rotunda & J. Young, Handbook on Constitutional Law 418–19 (1978).

able means of achieving a legitimate governmental goal. *Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d at 151.[7] We presume, at the outset, that Regulation 3 is constitutional. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752, 766 (1976); *Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d at 151.[8] Thus National Western bears the burden of proving that Regulation 3 is unconstitutional. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. at 15, 96 S.Ct. at 2892, 49 L.Ed.2d at 766. Its burden, moreover, is a heavy one, for we give " 'well-nigh conclusive effect' to [a] legislative determination of community needs and solutions."[9] When exercising its "rich and flexible" police power, the District is limited only by "ample and protean" boundaries.[10] National Western, therefore, must prove that Regulation 3 is "wholly arbitrary and totally without value" in furthering a legitimate governmental goal, and that the regulation has "no meaningful relationship" to achievement of that goal. *Kite v. Marshall*, 661 F.2d 1027, 1030 (5th Cir. 1981).

The district court found that the District decided to require bulkheading at the time of transfer of the property because the cost of bulkheading could then be included as part of the price of the property. The district court also found that "the District had a legitimate expectation that the land would be sold and improved because of the almost certain development of the subdivision." National Western objects to these findings. It contends that Regulation 3 is irrational (1) because the regulation applies to many nonsale transfers of property, and thus a transfer of property will not necessarily produce cash with which to pay for bulkheading the property, and (2) because some properties might never be transferred, they therefore might never be bulkheaded.

These objections lack merit. The District could reasonably have concluded that Regulation 3 would cause properties to be bulkheaded and thus would facilitate the legitimate goal of aiding navigation. The regulation appears to have had exactly that effect: as the district court noted, all but ten of the 290 lots in Hide-A-Way on the Gulf now have adequate bulkheading, which led the district court to conclude that the regulation has substantially advanced its purpose. National Western's assertion that the regulation does not aim for a "quick cure" is irrelevant; so, too, is its assertion that the regulation should apply to a narrower class of property transfers. We will not invalidate a statute merely because the legislature could have drafted a wiser or more precise one. *Ferguson v. Skrupa*, 372 U.S. 726, 731–32, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93, 98 (1963); *Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563, 571 (1955); *Maher v. City of New Orleans*, 516 F.2d 1051, 1067 (5th Cir. 1975), *cert. denied*, 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976). A statute need only meet the test of rationality. We conclude that Regulation 3 meets this test.

7. *See Arceneaux v. Treen*, 671 F.2d 128, 134 (5th Cir. 1982); *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127–28 (5th Cir.) (quoting *Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940, 957 (1934)), *cert. denied*, 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981); *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1176 (5th Cir. 1979); *Maher v. City of New Orleans*, 516 F.2d 1051, 1058–59, 1061 (5th Cir. 1975), *cert. denied*, 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976); *Thompson v. Gallagher*, 489 F.2d 443, 447 (5th Cir. 1973) ("A regulation not reasonably related to a valid government interest may not stand in the face of a due process attack."). "While due process still protects a person's liberty in society, only those liberties or rights of 'fundamental' constitutional magnitude will be protected by the [courts].... Where no such right is restricted, the law need only rationally relate to any legitimate end of government." J. Nowak, R. Rotunda & J. Young, Handbook on Constitutional Law 410 (1978).

8. *See Kite v. Marshall*, 661 F.2d 1027, 1030 (5th Cir. 1981); *Maher v. City of New Orleans*, 516 F.2d at 1058.

9. *Maher v. City of New Orleans*, 516 F.2d at 1060 (quoting *Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27, 37 (1954)).

10. *Id.* at 1059.

## B

We turn now to National Western's argument that Regulation 3 effects a "taking without compensation" [11] in violation of the just compensation clause of the fifth amendment,[12] which the fourteenth amendment applies to the states.[13] National Western argues that Regulation 3 effects a taking by withdrawing, pending installation of bulkheading on its property, its right to alienate its property.

National Western bears the burden of proof on this issue. *Maher v. City of New Orleans*, 516 F.2d at 1965; *see Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130, 133 (1962). The district court held that National Western failed to carry that burden. It found that Regulation 3 did not diminish the available use of National Western's property; indeed, the district court found that "National Western has used the property for the very purpose for which it was intended." [14] The district court also found that the installation of the bulkheading has in fact increased the value of National Western's property.

We must credit these findings unless National Western proves that they are clearly erroneous. *Hill v. Texaco, Inc.,* 674 F.2d 447, 449 (5th Cir. 1982); Fed.R. Civ.P. 52(a). National Western has failed to do so. It has not shown that Regulation 3 is either "confiscatory" [15] or "inordinately burdensome," [16] or that Regulation 3 has denied it "economically viable use" of its property.[17] National Western's argument, baldly stated, seems to be that Regulation 3 effects a taking regardless of the magnitude of the burden that it imposes on National Western's ability to transfer its property. That argument does not hold water.[18] We, therefore, affirm the district court's holding that Regulation 3 does not effect a taking of National Western's property.

## III

National Western also contends that Regulation 3 violates the equal protection clause of the fourteenth amendment [19] by imposing the bulkheading requirement on one class of property owners—those who seek to transfer title to their property—while exempting all other property owners from the requirement. National Western argues that we must apply the strict scrutiny standard of review in evaluating its equal protection claim because, it asserts, Regulation 3 in effect classifies people in terms of their ability to exercise a funda-

---

11. This argument is not precluded by our conclusion that Regulation 3 satisfies the due process requirements that its purpose and means be reasonable. "Even if it comports with due process, a regulatory ordinance may nonetheless be a taking if it is unduly onerous so as to be confiscatory." *Maher v. City of New Orleans,* 516 F.2d at 1065.

12. "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

13. *San Diego Gas & Elec. Co. v. City of San Diego,* 450 U.S. 621, 623 n.1, 101 S.Ct. 1287, 1289 n.1, 67 L.Ed.2d 551, 555 n.1 (1981); *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 83, 100 S.Ct. 2035, 2042, 64 L.Ed.2d 741, 753 (1980); *Chicago, B. & Q.R.R. v. City of Chicago,* 166 U.S. 226, 234, 17 S.Ct. 581, 584–86, 41 L.Ed. 979, 984 (1897).

14. *Cf. Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 414–15, 43 S.Ct. 158, 160, 67 L.Ed. 322, 324 (1922) (Holmes, J.) (statute made use of property "commercially impracticable").

15. *Wheeler v. City of Pleasant Grove,* 664 F.2d 99, 100 (5th Cir. 1981), *petition for cert. filed,* 50 U.S.L.W. 3696 (U.S. Feb. 16, 1982) (No. 81–1547).

16. *Maher v. City of New Orleans,* 516 F.2d at 1067.

17. *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106, 111 (1980); *see Hernandez v. City of Lafayette,* 643 F.2d 1188, 1197 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).

18. *See Goldblatt v. Town of Hempstead,* 369 U.S. at 592, 82 S.Ct. at 989, 8 L.Ed.2d at 132; *Pennsylvania Coal Co. v. Mahon,* 260 U.S. at 413, 43 S.Ct. at 159, 67 L.Ed. at 324; *Maher v. City of New Orleans,* 516 F.2d at 1065.

19. "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. amend. XIV, § 1.

mental right, the right to alienate property. We reject this argument, however, for as we noted earlier, slip op. p. 2764 *supra*, the right to alienate property is not a fundamental right that calls for application of strict scrutiny.

National Western also argues in the alternative that Regulation 3 fails even under the rational basis standard of review. It argues that the regulation contains an irrational classification because it distinguishes between property owners who transfer title to their property, and those who do not transfer title, and imposes the bulkheading requirement only on property owners who transfer title to their property. This argument, however, merely repeats one of the contentions that National Western advanced to support its due process claim, slip op. pp. 2764–2766 *supra*; and like that contention, this one also must fail. "In many cases ... it makes little difference which clause of the Fourteenth Amendment is used to test the statute in question. The question is whether the challenged statute is a rational means of advancing a valid state interest." *Thompson v. Gallagher*, 489 F.2d 443, 447 (5th Cir. 1973). This is such a case. To establish a violation of the equal protection clause, National Western had the burden of proving that Regulation 3's "classification" of property owners is "wholly arbitrary or does not teleologically relate to a permissible government objective." *Kite v. Marshall*, 661 F.2d at 1030.[20] The district court found that National Western had failed to carry its burden and, therefore, held that Regulation 3 does not violate the equal protection clause. We affirm the district court's holding.

The district court's judgment is AFFIRMED.

[20]. *See generally McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *Id.* at 425–26, 81 S.Ct. at 1105, 6 L.Ed.2d at 398.